**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**JOHN R. DETTELIS,**

                            **Plaintiff,**

**v.**

                                                    **14-CV-1096A(Sr)**

**COUNTY OF CATTARAUGUS and**

**LORI PETIT RIEMAN,**

                            **Defendants.**

───────────────────────────────


<u>**REPORT, RECOMMENDATION AND ORDER**</u>

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #11.


Currently before the Court is defendants' motion to dismiss the complaint. Dkt. #10.  For the following reasons, it is recommended that the motion be granted.


**BACKGROUND**

Plaintiff was arraigned in the Town of Yorkshire Court on July 19, 2011 upon a misdemeanor information alleging that he committed assault in the third degree, in violation of New York Penal Law § 120.00.  Dkt. #1, ¶ 21.

At a court appearance on August 4, 2011, plaintiff rejected a pre-trial disposition, prompting the Town Justice to set the matter for trial the following week. Dkt. #1, ¶ 24. The Assistant District Attorney ("ADA"), appearing on behalf of the Cattaraugus County District Attorney's Office requested "more time than a week." Dkt. #1, ¶ 24. Trial was set for October 13, 2011. Dkt. #1, ¶ 24.

On October 13, 2011, the complainant failed to appear, prompting plaintiff's attorney to move to dismiss the charge. Dkt. #1, ¶¶ 25-26. The ADA, noting that he had not had any contact with the complainant, did not oppose the motion. Dkt. #1, ¶ 27. The Yorkshire Town Court dismissed the charge. Dkt. #1, ¶ 28.

On October 31, 2011, the Cattaraugus County District Attorney's Office moved to restore the misdemeanor information to the trial calendar "in the interests of justice." Dkt. #1, ¶ 30. The Yorkshire Town Court granted the motion after oral argument on January 12, 2012, opining "I don't see any problem with the speediness of it." Dkt. #1, ¶¶ 32-36.

On May 8, 2012, plaintiff was convicted after trial of assault in the third degree. Dkt. #1, ¶ 38. On October 11, 2012, Justice Laird sentenced plaintiff to a term of imprisonment of six months. Dkt. #1, ¶ 40.

On October 30, 2012, the Hon. Thomas P. Franczyk, Acting J.S.C., granted plaintiff's application for an Order staying and suspending the Judgment of Conviction and

releasing plaintiff from custody on bail.  Dkt. #1, ¶ 43.  Plaintiff spent a total of 21 days in the Cattaraugus County Jail.  Dkt. #1, ¶ 45.

On appeal, plaintiff argued that the Town Court's granting of the ADA's motion to reopen the prosecution was a violation of plaintiff's right to a speedy trial as provided under New York Criminal Procedure Law section 30.30.  Dkt. #1, ¶ 46.

By Decision and Order issued May 14, 2013, the Cattaraugus County Court noted that the A.D.A's motion was dated October 31, 2011, which was more than 90 days after the filing of the information, and remanded the matter back to the Yorkshire Town Court to determine whether any of the time could be excluded for speedy trial purposes. Dkt. #1, ¶¶ 48-50.

At oral argument on remand, plaintiff argued that the ADA's statement of trial readiness on August 4, 2011 was illusory because the ADA stated he could not be ready for trial next week and admitted on October 13, 2011 and on January 12, 2012 that he had never spoken to or had any contact with the complainant.  Dkt. #1, ¶ 52.  Plaintiff alleges that the ADA. failed to specify any time which was excludable from the 90-day speedy trial period but simply argued his belief that the People were not required to have been in contact with the witness before declaring readiness.  Dkt. #1, ¶¶ 53-54.  On November 14, 2013, Justice Laird issued a Decision stating, *in toto*, "[a]fter reviewing the 30/30 motions presented to this court and previous court records, I hereby deny the [speedy trial] motion."  Dkt. #1, ¶ 55.

-3-

On December 30, 2013, the County Court granted plaintiff's appeal; reversed and vacated plaintiff's conviction; and dismissed all charges against plaintiff on the grounds that the reinstatement of the case against plaintiff after expiration of the statutory speedy trial time violated plaintiff's right to a speedy trial.  Dkt. #1, ¶ 58.

Plaintiff names as defendants the County of Cattaraugus and the Cattaraugus County District Attorney, Lori Petit Rieman, in both her official and individual capacity.  Dkt. #1, ¶ 16.  Plaintiff alleges that the actions taken by the ADA were taken "on behalf of, at the direction of, and/or with the knowledge, [sic] of Defendant Lori Petit Rieman[,] the Cattaraugus County District Attorney."  Dkt. #1, ¶ 57.  Plaintiff argues that the ADA knew that the speedy trial clock had run on or about October 17, 2011 and knew or should have known that no statutory provision authorizes a local criminal court, such as the Yorkshire Town Court, to reopen a dismissed case.  Dkt. #1, ¶ 36.

Plaintiff, represented by counsel, asserts the following causes of action: (1) malicious prosecution depriving him of his Fourth, Fifth, and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983, against Lori Petit Rieman in her individual capacity based upon her direct involvement in and/or knowledge of the willful disregard of plaintiff's statutory speedy trial rights set forth in Section 30.30 of the New York Criminal Procedure Law and against the County of Cattaraugus based upon a policy and custom permitting the willful disregard of statutory speedy trial rights set forth in Section 30.30 of the New York Criminal Procedure Law as evidenced by  the direct involvement and/or knowledge of municipal policymaker Lori Petit Rieman; (2) malicious prosecution; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) negligent hiring,

training and supervision of ADA's.  Dkt. #1.  Plaintiff's civil rights claim is brought against

defendant Lori Petit Rieman in her individual capacity; plaintiff's tort claims are brought

against defendant Lori Petit Rieman in both her official and individual capacity.  Dkt. #1,

¶ 16.

## DISCUSSION AND ANALYSIS

### 42 U.S.C. § 1983

<u>Lori Petit Rieman</u>

Lori Petit Rieman argues that, even accepting for purposes of this motion

plaintiff's conclusory allegation that she was personally involved in the prosecution of

plaintiff, plaintiff's § 1983 claim is barred by the doctrine of absolute prosecutorial

immunity.  Dkt. #10-2, pp.4-6.

Plaintiff responds that Lori Petit Rieman is not entitled to absolute

prosecutorial immunity because her actions "were not intimately associated with the

judicial phase of the criminal process, but rather were administrative or investigative."

Dkt. #13-3, p.7.  Plaintiff also argues that Lori Petit Rieman's "actions were in the clear

absence of all jurisdiction and without any colorable claim of authority," explaining that

"[n]o provision of law authorizes a District Attorney to prosecute a dismissed case,

particularly past the 'speedy trial time' guaranteed by New York State law."  Dkt. #13-3,

p.8.

Lori Petit Rieman replies that litigation of a speedy trial issue is a

prosecutorial function that entitles prosecutors to absolute immunity.  Dkt. #14-1, p.1.

Moreover, Ms. Rieman argues that the prosecution of plaintiff for assault is well within the jurisdiction of a prosecutor.  Dkt. #14-1, pp.2-3.  Finally, Lori Petit Rieman argues that it is immaterial for purposes of immunity whether the prosecutor's legal analysis of the speedy trial statute was correct.  Dkt. #14-1, p.3.

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

"It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune

from civil suit for damages under § 1983'" unless the prosecutor proceeds in the clear absence of all jurisdiction or acts without any colorable claim of authority. *Shmueli v. City of New York*, 424 F.3d 231, 236 & 237 (2d Cir. 2005) (internal quotation omitted), *quoting Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *See, e.g., Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) (absolute immunity will be denied where a prosecutor has linked his authorized discretion to initiate or drop criminal charges to an unauthorized demand for a bribe, sexual favor, or the defendant's performance of a religious act).  So long as the pertinent statutes authorize prosecution for the charged conduct, "the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."  *Shmueli,* 424 F.3d at 237.  "A prosecutor 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'"  *Anilao v. Spota*, 774 F. Supp.2d 457, 478 (E.D.N.Y. 2011), *quoting Stump v. Sparkman*, 435 U.S. 349 (1978) (quotation omitted). The focus is whether the prosecutor's actions "were intimately associated with the judicial phase of the criminal process."  *Imbler*, 424 U.S. at 430.  In other words, in order to state a claim, a plaintiff must allege that the alleged misconduct was not related to the prosecutor's role as an advocate.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

The Supreme Court has also made clear that absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged

in investigative or administrative tasks. *Schnitter v. City of Rochester*, 931 F. Supp.2d 469, 474 (W.D.N.Y. 2013), *quoting Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009), *aff'd* 556 Fed. App'x 5 (2d Cir. 2014).  For example, absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, makes statements to the press, or acts as a complaining witness in support of a warrant application. *Van de Kamp*, 555 U.S. at 344.

In *Van de Kamp*, the Supreme Court considered a claim that a deputy district attorney violated his constitutional obligation to provide a defendant's attorney with impeachment-related information, *aka Giglio* material, because the district attorney failed to adequately train and supervise deputy district attorneys on the subject and failed to create a system for the deputy district attorneys to access impeachment information pertaining to jailhouse informants. *Id.*  Although the Supreme Court agreed that plaintiff's claims attacked the administrative procedures of the district attorney's office and assumed that *Giglio* imposed training, supervision or information system management obligations upon the district attorney, the Supreme Court determined that supervisory prosecutors "enjoy absolute immunity" from legal claims focused upon administrative obligations "directly connected with the conduct of a trial." *Id.*  The Supreme Court explained that

> unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim.  The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like.  Moreover, the types of activities on which [plaintiff's] claims focus necessarily

> require legal knowledge and the exercise of related
> discretion, *e.g*., in determining what information should be
> included in the training or the supervision or the information-
> system management.

*Id.*  Thus, where the claim is that faulty training or supervision allowed an individual

prosecutor to err during the course of the prosecution, absolute immunity applies

equally to the supervisory prosecutor as to the trial prosecutor.  *Id.* at 344-46.


        In the instant case, plaintiff's complaint targets the District Attorney's

failure to train the ADA regarding the propriety of seeking reinstatement of criminal

charges for assault and his opposition to defense counsel's speedy trial argument

before the trial judge. As the District Attorney's Office is clearly authorized to prosecute

an assault within its jurisdiction, plaintiff's argument that the ADA was acting in the

absence of all jurisdiction and without any colorable claim of authority is without merit.

Furthermore, because the advocacy required to address the speedy trial issues raised

by defense counsel and convince the Yorkshire Town Court to reinstate the criminal

charges required "legal knowledge and the exercise of related discretion," *Van de*

*Kamp*, 555 U.S. at 344 and was "intimately associated with the judicial phase of the

criminal process,"  *Imbler*, 424 U.S. at 430, the Court concludes that absolute immunity

should bar this cause of action. *See Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011)

("Prosecutors are absolutely immune from suit only when acting as advocates and

when their conduct involves the exercise of discretion.").  Accordingly, it is

recommended that the first cause of action, alleging violation of 42 U.S.C. § 1983

against Lori Petit Rieman in her individual capacity, be dismissed as barred by the

doctrine of absolute prosecutorial immunity.

County of Cattaraugus

The County of Cattaraugus argues that it cannot be held liable for the actions of the District Attorney because a district attorney represents the state when prosecuting a criminal matter and is, therefore, entitled to Eleventh Amendment immunity. Dkt. #10-2, p.6.

Plaintiff responds that Lori Petit Rieman's failure to train ADA's on the application of Section 30.30 of New York's Criminal Procedure Law constitutes management and administration of the District Attorney's Office as a county policymaker rather than a state actor.  Dkt. #13-3, pp. 8-9.  Alternatively, plaintiff argues that the Court of Appeals' decision in *Baez v. Hennessy*, 853 F.2d 73, 78 n.2 (2d Cir. 1988), is based upon a complete misstatement of New York law and should be abandoned."  Dkt. #13-3, pp. 9-10.

In *Monell v. Department of Social Services*, the Supreme Court determined that although Congress had not intended to expose municipalities to *respondeat superior* liability for all misdeeds by municipal employees, it also did not intend to exempt municipalities from § 1983 liability in all cases.  *Walker v. New York*, 974 F.2d 293, 296 (2d Cir. 1992), *citing* 436 U.S. 658 (1978), *cert. denied*, 507 U.S. 961 (1993).  The Supreme Court concluded that "it is only when the municipality itself commits the misdeed, that is, 'when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'"  *Id., quoting Monell*, 436 U.S. at 694. Thus, to impose liability upon the County of Cattaraugus,

-10-

Lori Petit Rieman must be acting as a County policymaker with respect to plaintiff's allegations regarding the willful disregard of his statutory speedy trial rights set forth in Section 30.30 of the New York Criminal Procedure Law.  *See Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998) ("The critical issue . . . is whether, in promulgating the [challenged policy], the DA acted as a policymaker for Orange County or for the State of New York.").

"Where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker."  *Walker*, 974 F.2d at 301. "When prosecuting a criminal matter," however, "a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993), *quoting Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989).  In *Baez*, the Court of Appeals for the Second Circuit "generally determined that because of the limits on the county's authority over the district attorney, the county could not be held responsible for the district attorney's conduct."  *Miller v. County of Nassau*, 467 F. Supp.2d 308, 314 (E.D.N.Y. 2006); *See Baez*, 853 F.2d at 77 ("A county has no right to establish a policy concerning how [a district attorney] should prosecute violations of State penal laws.").

Although plaintiff argues that *Baez* is based on a misunderstanding of *Fisher v. State of New York*, 10 N.Y. 2d 60, 62 (1961), the Court of Appeals noted in *Baez* that its "interpretation of New York law has been made with full cognizance of the New York Court of Appeals' holding in *Fisher* . . . that the State is not liable on a theory of respondeat

superior for the tortious acts of a prosecuting district attorney," and declined to determine whether any level of government in New York could incur section 1983 liability under *Monell* for quasi-judicial acts of a district attorney.  853 F.2d at 78 n.2.  The *Fisher* Court itself recognized that federal courts, including the United States Supreme Court, had deemed a prosecuting attorney in New York, enforcing state statutes, to be acting for the entire state even though he is a local officer for other purposes.  10 N.Y.2d at 62.  In any event, the distinction between a prosecuting district attorney as a state actor and a managing district attorney as a county actor, set forth in *Baez* and *Ying Jing Gan*, remains binding upon this Court.

In *Walker,* the Court of Appeals for the Second Circuit determined that "a complete failure by the DA in 1971 to train ADAs on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to give rise to § 1983 municipal liability."  974 F.2d at 300.  In reaching this conclusion, the Court of Appeals noted:

> Because the proper course of conduct was not at all obvious in 1971 absent some training in the intricacies of *Brady*, a jury could find that the complete failure to train or supervise alleged here would likely result in ADAs making the wrong choices about turning over this kind of *Brady* material.  We express no view as to whether such a jury finding would be supportable in other time periods or with respect to other kinds of exculpatory evidence.

*Id.*  The Court of Appeals distinguished *Walker*'s challenge to "the district attorney's management of the office – in particular the decision not to supervise or train ADAs on *Brady* and perjury issues," from *Baez's*  "challenge to the decision by an ADA to prosecute an individual and the district attorney's endorsement of that decision." 974 F.2d at 301.  The Court notes that the Court of Appeals' decision in *Walker* precedes

the Supreme Court's determination in *Van de Kamp* that prosecutors involved in supervision or training or information system management relating to the obligation to disclose *Giglio* information enjoy absolute immunity.  555 U.S. at 342.

As set forth previously, it is the opinion of this Court that the advocacy required to address the speedy trial issues raised by defense counsel and convince the Yorkshire Town Court to reinstate the criminal charges required "legal knowledge and the exercise of related discretion," *Van de Kamp*, 555 U.S. at 344 and was "intimately associated with the judicial phase of the criminal process"  *Imbler*, 424 U.S. at 430.  As a result, it is the opinion of this Court that Lori Petit Rieman was acting as a representative of the state rather than the county.

The Eleventh Amendment to the United States Constitution divests the federal court of jurisdiction over claims for monetary damages against a state actor acting in her official capacity unless there is a waiver of this immunity by statute or the state consents to suit.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  It is well established that New York has not consented to suit for claims commenced pursuant to 42 U.S.C. § 1983 and that the civil rights statute was not intended to override a state's sovereign immunity.  *Mamot v. Board of Regents*, 367 Fed. Appx 191 (2d Cir 2010), *citing Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977) *and Quern v. Jordan*, 440 U.S. 332, 342 (1979).  Therefore, it is recommended that the first cause of action, alleging violation of 42 U.S.C. § 1983 against the County of Cattaraugus be dismissed as barred by the Eleventh Amendment. *See Markarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000) (A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it).

**State Law  Tort Claims**

        In accordance with 28 U.S.C. § 1367(c), it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

**CONCLUSION**

        For the reasons set forth above, it is recommended that defendants' motions to dismiss (Dkt. #10), be granted.

        Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

        This Report, Recommendation and Order be filed with the Clerk of the Court.

        ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

-14-

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            March 31, 2016

  *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**